Good morning, your honors. Jim Workman is a decorated veteran of the United States Army who served multiple tours of duty and suffered a traumatic brain injury. As a result of his service-related injuries, he has experienced PTSD, seizures, depression, anxiety. His mental disability manifested in several symptoms or challenges that are documented throughout the Social Security Administration file, which was Trial Exhibit 1. Those symptoms and challenges include things relevant to this appeal, including poor memory and concentration, slowed thinking, difficulty understanding written instructions and following those instructions, difficulty with reading comprehension. Counselor, you're not contending that he was sufficiently handicapped that he couldn't even do the business he was performing? He was doing a HVAC business and you're saying these conditions were so severe he couldn't even read a government notice about whether he was working or not, or understand the intent of a question into whether or not he was employed? There is not a contention that he was not doing any particular activity related to the HVAC business on the context of, because of his mental, there's not a dispute in this that he was doing or not doing. But I think, Your Honor, it is a relevant context for the court to consider when it comes to an issue of his understanding of the government Social Security forms, concepts, rules, and regulations, what background he had at the time. But simple questions like, are you working? Are you receiving income? You're saying that he had medical conditions that made it improbable or impossible for him to understand that income, other than the disability income he was receiving, needed to be disclosed? I think the trial evidence showed that he conveyed that his understanding, and this is how the district court at the sentencing conveyed it, was his lay understanding, was that the concept of work and substantial gainful activity were essentially the same, and that he understood when asked, are you working? That was, are you working to that level that it would affect your benefits? And so that may be confusion, and I'm not, ultimately this court doesn't have to evaluate whether that misunderstanding or confusion was reasonable. What was his understanding of the limit that the regulation posed? As he described it in the interview that was put in by the government's evidence, was that he was told, I think, roughly $1,000 per month, which was the substantial gainful activity in the range of that, the limit, which is, I think, Defense Exhibit 1 lays out exactly what the substantial gainful activity limits on a monthly basis were. Well, is there any factual dispute as to that the ultimate amounts that were being acquired and obtained through the business over the course of these years exceeded that? Yes, there is, Your Honor, particularly as to whether it would be accountable to him. So if Exhibit 1 lays out the business's returns, but that doesn't even necessarily equate to what Mr. Workman, what would be attributed to Mr. Workman. His claim consistent throughout was that, and what he expressed and what was described as his lay understanding was, I didn't believe I had to report this, I didn't understand that until it reached a limit. And once we reached that limit in 2015, he did report. And there is evidence that he acted consistent with his lay understanding. There are parts of this trial record, Your Honor, and the briefing in this case that resemble an administrative appeal from a denial of benefits. Now, you just referenced 2015, he understood. So are you now addressing the retribution forfeiture issue? Or are we still talking about whether he deserved not to be convicted? I was still discussing the sufficiency issue, but... Well, if he acknowledged, and I gather there was a March 2016 call, excuse me, where he made what looked to me like a significant admission. And doesn't that, why doesn't that end the sufficiency issue? That call describes what was reported at that time in terms of his activity. There's also evidence that indicates that there was a report made going back to October of 2015 when he would have become ineligible. And that came from the report in the Social Security Administration's overpayment of benefits starting in October 2015. And there's no explanation how that October 2015 date came about, other than a report from Mr. Warchuk. Okay, but I just focused on the call. Yes. And I thought the call, he confirmed much of what the, maybe not quantifiably. And we're not claiming that in 2016, he was reaching inactivity and he did report that, which wouldn't make him guilty of fraud. The issue with the call... Why not? Well, because at that time he was reporting his activity in order to, with the understanding his benefits would be removed. Now what is controversial about that call is whether he, there was in fact any statement going back all the way to February of 2009. Now I understand that, but at what point does, can the jury begin, at what date does the jury legitimately infer fraud? Well, we don't think they do in this case because, in fact, his report was consistent with his lay understanding. And this gets back to the question... The jury got the lay understanding, you know, that was argued. Well, we understand that that was an issue, but it was nonetheless the district courts, we submit the duty based on this evidence to direct a verdict or enter a judgment of acquittal based on the evidence presented here. The government was not... Was that argued at the instruction conference? It seems to me we're, the second time this morning we're arguing at the appellate level things that are supposed to be hammered out at trial. Your Honor, I believe the motion for judgment of acquittal was filed and the trial counsel, and I can get the page when I sit down, but that incorporated the arguments in support of the motion for judgment of acquittal at the jury instruction stage. But there's no instruction error raised on appeal. That's true. We have not challenged the instructional issue, but nonetheless, even without instructional error, there can be error from the district court in not granting a judgment of acquittal. What case says that? Well, we're not challenging... What Eighth Circuit case says that? If a pre-instruction acquittal motion is denied and the case is then submitted to the jury, the appellate court leaps back to that pre-jury ruling. Perhaps I misphrased. We're not challenging the wording of any of the instructions. We have challenged the submission of the case and the denial of the post-trial motion along the similar lines for a judgment of acquittal. So the sufficiency challenge... Okay. What's your best Eighth Circuit case? I haven't looked at this for a while. I believe... I'm not certain of one if I understand the context, but I think on the record here, the sufficiency challenge was preserved at each stage, and that is the core issue that is the first issue for Mr. Workman in this appeal. In an administrative dispute, the Social Security Administration can get a long way by saying that someone does not understand the agency's rules. They don't have to prove that. Here, in a criminal case, this is important to remember, a criminal case, the charges of fraud, they have to show that Mr. Workman truly understood the program that he was essentially defrauding. We encourage the court, if you haven't reviewed the audio or the transcript of the interview of Mr. Workman... I was going to add, the government argues that your argument that it need not prove the defendant understood the rules, which is kind of your core sufficiency argument. What case do you have that establishes the government's wrong? I don't think from a point of first principles that you can establish intent to defraud a government program... So you don't have a case? Every criminal trial is distinct in the Social Security Administration. SSA fraud is not a routine thing. I think the most thoughtful explanation of this comes from the Phillips case cited in the Fifth Circuit case, describing exactly what is necessary for fraudulent intent. When it comes, if somebody mistakenly misunderstands the government, what is required of them in order to obtain benefits, that's not fraud. If they have a misunderstanding of the rules or of what the form is asking of them, that's not fraud. Even if that misunderstanding is careless... So the ultimate question of whether there was understanding or absence of it, was that the jury's decision? The jury was given the opportunity to decide that issue, but nonetheless, this court has an obligation, even when it gives deference to jury verdicts, that does not dilute the government's burden to prove beyond a reasonable doubt, nor this court's repeated statements that it, or this court's statements and other opinions, that it must grant a judgment of acquittal when the inferences are equally strong in favor of innocence or guilt. So why doesn't the March 16 phone call establish a basis for the jury to decide that it rejects I didn't understand the rules? Well, it shows a consistent, it is equally supportive of his understanding, except for the point, the only piece of it that is not, is his claim that the government twists that, or says that that conversation means that he was working 20 hours a week, earning $50,000 a year. For us, it's could a reasonable jury make that inference? Right. And given the... Of course, the government says yes. Given the bank records that clearly show that report could not have possibly been going back to February of 2019. Forget the 15 report. Did the admissions that he made in response to that report establish that he understood the rules? Or had a sufficient understanding of the rules to know that the question, are you working, doesn't turn on $1,000 a month, unless he can identify the unnamed agent who supposedly told him that in a phone call. The time at which he makes that statement in March of 16, though, he is earning an amount and therefore is working according to his understanding. And so it isn't a fraudulent admission of any fraud. It's equally supportive of his own lay misunderstanding. You have the whole basis of he and his wife forming this company just before or just after he starts getting benefits in order for his continuing to work to be camouflaged under an LLC in which his wife has a seemingly superior role. I mean, the juries aren't that dumb. There was a two-year gap between the fictitious name registration and when he began receiving benefits. And even longer before. Aren't I right about the timing of benefits and the formation of the company? The benefits began in July of 2007. The fictitious name registration was in July of 2009. And the application for benefits months after 2007. So he's getting better after two years. But now he's getting these benefits not only for himself, but for what wound up being four children, as I understand. Dependent benefits. And not in 2009, but by 2014. And so now, well, you know, the best of both worlds would be to get both. So how can we do that? Well. To correct one thing, the last three children weren't added until 2016. All right. Counsel, you're well within your rebuttal time. You can continue if you like. No, I would like to reserve some for rebuttal. Thank you, sir. Thank you, Mr. Lance. May it please the court, Lee Farmakidis for the United States. Counsel, I know you want to start where the argument is, but let me just warn you. That based on your brief, I have a strong inclination to reverse on restitution and forfeiture. So maybe you want to get there at some point. I can start with the monetary penalties if that's where. No, I'm not. I don't want to control any. I'm just giving you a warning. Let me spend just a moment on the sufficiency argument because I do want to pick up on one very strong point made by the court, which is the late in the period evidence of fraudulent intent. There's no dispute here that the jury was properly instructed. The government had the burden to show that Mr. Workman had the requisite intent under the statutes of conviction. That's exactly what the government's evidence showed in this case. The government showed that over a period of seven years, through a pattern of affirmative misrepresentations and omissions, Mr. Workman obtained benefits intended for individuals who cannot work while he owned and operated an HVAC business. Mr. Workman obtained close to $170,000 in benefits. Among the most powerful pieces of the government's evidence of fraudulent intent was Mr. Workman's continued acceptance and indeed application for further benefits in January of 2016 where this court, at a time when this court has noted, there's no question that Mr. Workman understood his work activity exceeded SSA's thresholds. In addition to that evidence, there's evidence of Mr. Workman's repeated lies about his work activity. People don't lie about benefits they understand, they reasonably believe they're entitled to. His false exculpatory statements when confronted with those lies, which Appellant's Counsel characterizes as his lay understanding, those are, that's... What statements do you point to that you characterize as knowingly false? Are you working now? No. What do you do, how do you spend your time? Doing chores around the house, watching television. When he spoke to a psychologist in 2010, so this is over a year after he started the business, he told the psychologist, I hope to one day start an HVAC business so that I can get off benefits. Evincing his understanding that work meant he would not be entitled to benefits. Starting that business, that statement showed his understanding. There's also evidence that SSA notified Mr. Workman in 2010 that his benefits would be paid if he didn't return a form that detailed his work activity. In response, that's when Mr. Workman provided the form that said, no, I'm not working and my daily activities consist of chores around the house. All of that was powerful evidence of Mr. Workman's fraudulent intent. That's exactly the type of evidence that this Court's case law says is sufficient to prove fraudulent intent. The jury, as this Court pointed out, the jury considered Mr. Workman's self-serving, out-of-court statements and concluded they were not credible because of the ample evidence that supported a finding of fraudulent intent. The jury appears to have reasonably concluded, among other things, that Mr. Workman well understood what it meant to work and that his business constituted work in the common understanding of that term and that the phone calls he alleged to have occurred never happened. There's no basis to set aside the jury's determination as to the sufficiency of the evidence. I'll turn now to the monetary penalties. Once again, the arguments in the appellant's brief mischaracterized the factual record. My main problem is you spend pages and pages arguing about how complex the question of SGA is, and then when we get to the monetary penalties, you just say, well, we titled you up $50,000 a year from 2009 forward and he owes the whole thing. I think a deep dive into precisely what you presented is absolutely essential here. Okay, and so I'd like to review some of the evidence that was presented at trial, and this is in the trial record, and we can walk through it. I haven't read your declaration, but it seems to me as described in the brief, it's very general. Basically saying we've got a seven-year patent, we get the whole thing back. So Judge Loken, I'd like to talk about this in the detail it deserves because I agree. There's an exhibit that details the SSA's restitution calculation. That exhibit walks through why the trial work period started in February. What's the exhibit number? I wanted to pull up the pages so I get all the exhibit numbers right. If you just give me one moment. Okay, so I believe it's government's exhibit 26 is the loss determination. But the explanation of that letter is in the record in a couple places. So if you look at the testimony of Tuan Phan, he explains the restitution calculation, but the best explanation of the restitution calculation is actually the transcript of the interview of Mr. Workman from 2017. In that interview, Mr. Phan, who testified at trial, and Special Agent McKimmons, who also testified at trial, explain the basis for that letter, and they explain it to Mr. Workman too. And what the agents say is that the SSA looked at Mr. Workman's case just like they look at any other case. The first thing they looked at was the application of the trial work period. The trial work period they found began in February of 2009, and that was based on the information Mr. Workman provided in the phone call to Social Security in March of 2016. But is there a recalculation with all the SGA complexities, and the fact that he's getting benefits on behalf of children as well as others, and that his earnings attributable to him over time were not identical? They weren't always $50,000 a year. Yes, and I'll get there. The first step is the trial work period, which is an hours-based test. So it's not until the trial work period is exhausted that we get to the SGA analysis. And that's all in the transcript, and the sites are in the brief on pages of the APALY's brief. If you look at pages 15, 16, 17, 18, 19, all the sites are there. But I'll walk the court through what the testimony was and about what SSA did. We can't do it this morning, but give me the road map. Okay, so first is the trial work period. It starts in February of 2009. The 20 hours of work per week that Mr. Workman reported, that satisfies the trial work period. That's nine months, so that goes from February until October of 2009. Once the trial work period ends, that's when the agency looks at the SGA analysis, the substantial gainful activity. So as of November of 2010, the question is whether Mr. Workman's activity is SGA. Now, the agency is very clear. There are three tests to make that determination. The test they applied is the comparability analysis. It has nothing to do with whether Mr. Workman made $50,000 in 2016 going all the way back. That's not how comparability works. Comparability looks at whether people who run successful HVAC businesses in the community are engaged in substantial gainful employment. Let me ask you this. What percentage of the total benefits received during the period that was alleged to be fraudulent are recovered in the loss analysis? Your proof makes it sound like it's 100%. It's the benefits Mr. Workman received as of February 2010 forward. That's the loss calculation. Because Mr. Workman was engaged in substantial gainful activity under agency policy as of November 2010, the agency then gave him three months under its extended period of eligibility where they gave him three additional months of benefits. The first payment that this loss calculation determined he wasn't entitled to under its regulations was February of 2010. It was not based on his countable income. I think that the appellant has made some arguments that SSA applied the wrong test. I'll respond to the letter he put in yesterday with an explanation to my understanding as to why the agency applied its three tests. Counsel, what regulatory language should we look to, provisions in code or statute, and what case authority do we look to that shows us what the process of calculation of restitution in a case like this should look like? I want to talk first about the case law because I can give you the regulatory sites. They were exhibits at trial. I think Exhibit 28 is one of them. It is laid out in the briefs what SSA did, but I want to talk about the case law because I want to talk about what is the government required to prove under the MVRA. That's the issue here. Under the MVRA, the government has to prove by a preponderance of the evidence the restitution, and it needs to be a reasonable restitution calculation. The intersection of the MVRA and the Social Security regulations in terms of what has the government actually lost. In a situation like this, it's not like the fraud cases where there's just a complete vagueness of who lost what and how much. There were specific amounts of money paid to specific individuals for specific periods of time. That's right. You can start with to determine then what of that amount was unlawfully obtained. Right, and that's what the government's done, and I think that's where the case law comes into play. What should the court be doing in a case like this where you have a complicated regulatory backdrop? SSA makes a determination. What does the court look at? What's reasonable to do? I think the Scholl case is a great case to look at. That's the Fourth Circuit case we cited. You better have an Eighth Circuit case because in my experience with loss calculations and forfeitures, etc., other circuits more often than not get it wrong to the government's benefit. Okay, so I think you can look at the Carey case and the Asamani case out of the Eighth Circuit. They don't address the SSA context, but I'll tell you why I think they're particularly relevant here. I think the Anderson case out of the Tenth Circuit is another. I don't see Carey in your case list. It's in our brief. Oh, there it is. It's with a K. I'm sorry. It's with a K. SSA made its regulatory determination based on the information Mr. Workman provided. Workman said he started working in February of 2009. He said he was the owner-operator of an HVAC business. He said he was working 20 hours a week. That's what made SSA determine he wasn't eligible to get benefits as of February 2010. Now, the cases where the court has said, SSA, what you did is not sufficient, that's the Anderson case that the appellant cites. That's a case totally unlike the facts here. That's Tenth Circuit. Right. I thought you gave me Two-Way Circuit. The Two-Way Circuit cases are not in the SSA context, but I'll tell you why I think they're really relevant. Don't give me the second one again. Kerry and Asamani is a forfeiture case. It might not be cited in our brief. I'm sorry if it's not. But the concept there is- Aponte, you mean? I might not have cited the Asamani case, which is a forfeiture case from the Eighth Circuit last year, 2021. I don't- I think it might not be in the brief, Judge Loken. I'm sorry. But I want to say why- Would you put a 28J in with it? Sure. I'd be happy to. I think the reason they're particularly relevant here is if Mr. Workman believed that the factual findings on which the restitution order and calculation was wrong. For example, I wasn't working 20 hours a week. He's never provided any information to show, here's why I was only working five. I wasn't going out on HVAC calls. He's never provided that kind of evidence. And that's what Kerry and Asamani say. If he wants to rely on the legitimacy or some argument that he was entitled to these payments for some period of time, then it's up to the district court's determination. SSA's determination is perfectly reasonable. These are difficult-to-calculate fraud circumstances. What the government has done satisfies its burden. The other thing I want to cite on the countable income issue is even if that test were to apply, I want to point the court to the instances in the record that show that Mr. Workman withdrew cash from his business checking account. This is reflected in the trial transcript at 235. There's an exhibit showing cash withdrawals that he made from that business account from 2009, 2010. I think in 2010 the number was $17,500. There's testimony in the trial transcript that under SSA guidelines, that counts as income. I think it's important for the court to focus on those facts as well. I see my time is up. Thank you, and we ask that the court affirm. Thank you, counsel. Mr. Lance, your rebuttal. Thank you, Your Honor. Your Honor, in the brief rebuttal, I will focus first on the restitution piece because I did not get there earlier. The restitution judgment here should not stand on the assumption that Jim Workman worked for six to seven years, 20 hours every week, and earned $50,000 salary every year because that's plainly a false statement given other evidence in this record, and the government presented no evidence to show. I thought the argument was they didn't rely on that report that said $50,000 a year, which is never really corroborated. Where it's twisted is they're saying we didn't rely on the dollar amount, but they want to still rely on the 20 hours per week that's contained in the same report. So they want to say half of that's a mistake, but the other half we want to keep for our restitution judgment. We don't think any of it particularly is supported given no one testified to that. We don't even know who took that note down, and it's plainly verifiably false given the bank account records that show in the entire year they had $20,000, $28,000 in deposits. Well, 20 hours a week may not, if there are also cash withdrawals. All that the government needs to prove is it went over SGA, right? The cash withdrawals, first of all, there's no evidence to indicate those weren't for business expenses, and the government's witnesses acknowledged they could be, and they wouldn't qualify. And even in the years – Well, but the business is part of the fraud. The cash withdrawal issue, though, there were not cash withdrawals in the year. To go to the question about does the March 2016 report allow them to cover and sweep through this broad, sweeping restitution judgment, I don't think it supports it. I see my time is up. Thank you, Your Honors. We respectfully request reversal of the conviction on the sufficiency of the evidence, and absent that, vacating the restitution award. Thank you. And forfeiture award. Thank you, Mr. Lance. Thank you also, Mr. Farmakidis. We appreciate your argument to the court this morning and the briefing that's been submitted, and we'll take the case under advisement.